# IN THE COURT OF APPEALS OF IOWA

No. 19-0872
Filed August 7, 2019

**IN THE INTEREST OF W.B. and A.B.-S.,**
**Minor Children,**

**S.S., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Perry, District Associate Judge.


　　A mother appeals the termination of her parental relationship with her two daughters. **AFFIRMED.**


　　Jessica R. Noll of Deck Law PLC, Sioux City, for appellant mother.

　　Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

　　Molly Vakulskas Joly, Sioux City, attorney and guardian ad litem for minor children.


　　Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Sarah appeals the termination of her parental relationship with her daughters, two-year-old W.B. and eight-year-old A.B.-S. Sarah's petition on appeal raises three claims:

- The State did not meet the statutory requirements for termination.

- Termination is not in the children's best interests because of their strong bond with her.

- The juvenile court should have granted six more months for Sarah to regain custody of the children.

After reviewing the factual record and legal arguments anew, we reach the same result as the juvenile court.[1] Because of her untreated substance abuse and overall instability, Sarah cannot resume care of her daughters, now or in the foreseeable future. Their best interests are served by moving toward permanency through severance of their legal ties with Sarah.

## I. Facts and Prior Proceedings

A.B.-S. was born in October 2010; her father is Ryan. W.B. was born in January 2017; her father is Joshua.[2] The family drew the attention of the Iowa Department of Human Services (DHS) at W.B.'s birth. When the newborn tested positive for marijuana, Sarah agreed to a safety plan.

---

[1] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Although the juvenile court's fact findings are not binding, we give them weight. *Id.* The State must offer clear and convincing evidence to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence is clear and convincing when it leaves no serious or significant doubts about the correctness of conclusions of law drawn from the evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). We focus our attention on the children's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).
[2] The juvenile court also terminated Joshua's parental rights. But he does not appeal.

Drug testing was part of that safety plan. But in July 2017, when W.B. was six months old, Sarah refused to submit to urinalysis, admitting the test would come back positive. Along with her own substance-abuse concerns, Sarah recognized the danger of allowing Joshua to care for W.B. because of his alcohol abuse. Yet she left W.B. with Joshua for an overnight visit, against the DHS's directions. Sarah described herself as "addicted to Josh."

In summer of 2017, police arrested Sarah for domestic abuse assault as a serious misdemeanor, assault as a simple misdemeanor, and criminal mischief. The police reported Sarah "sprayed Joshua in the face with spray paint, threw a glass at him that cut his neck, swung a bat at him but missed, and assaulted Joshua's 77-year-old grandmother" by spitting on her and punching her in the face. W.B. remained in Joshua's care for four days until police arrested him for his role in the dispute. The court imposed no-contact orders in both criminal cases.

As a result of the upheaval between Sarah and Joshua, the juvenile court removed W.B. and A.B.-S. from Sarah's custody. W.B. stayed with her maternal grandparents. A.B.-S. stayed with her father, Ryan. The court adjudicated them as children in need of assistance (CINA) in late July 2017. Meanwhile, Sarah participated in a substance-abuse evaluation. The evaluator diagnosed her with severe alcohol use disorder, severe cannabis use disorder, major depressive disorder, and moderate amphetamine-type substance use disorder. The evaluation recommended residential treatment.

Following that recommendation, in August 2017, Sarah entered the YWCA halfway house program. The YWCA program allowed Sarah to have W.B. in her care. Even with that accommodation, Sarah struggled to set boundaries with

Joshua. And she lied to service providers about their contact. Still, Sarah graduated from the YWCA program in late October 2017, and moved into her parents' home. Sarah began outpatient treatment the next month. Her attendance was sporadic but progress was fair.

As December 2017 rolled around, Sarah struggled to follow the outpatient treatment plan. She told the DHS worker "her sobriety high was definitely gone." Then, in late December, Sarah tested positive for benzodiazepines. At first, she denied any use but then admitted taking one of her mother's lorazepam. Sarah also reported using methamphetamine on New Year's Day. The relapse occurred when both children were in her care. Sarah left them with her mother while she used drugs at a neighbor's home.

By February 2018, the juvenile court decided it was not safe to leave W.B. in Sarah's care.[3] Sarah was unemployed and did not have independent housing. She did not comply with drug-screening protocols. Meanwhile, A.B.-S. was doing well in Ryan's care.

In late February, both W.B. and Sarah tested positive for methamphetamine on a hair-stat drug test. When Sarah was scheduled for another inpatient drug treatment, she jumped out of her father's car and disappeared for several days. She did not return to inpatient treatment, continued to use nearly every other day, and attended outpatient treatment sporadically.

Throughout the spring of 2018, Sarah made fits and starts at drug treatment. She showed little consistency outside the structure of an inpatient facility. Another

---

[3] In the spring of 2018, the DHS moved W.B out of her grandparents' home and into foster care because her grandparents relocated out of state.

setback occurred when she and Joshua violated their no-contact orders. That summer, police charged Sarah with vehicle theft, after she had been out drinking with a friend. Three days later, Sarah used methamphetamine and marijuana. She also faced additional criminal mischief charges in September 2018.

Sarah's instability continued through that fall. She failed to appear for a September dispositional review hearing. In October, Sarah was discharged from outpatient treatment for noncompliance, but did end up completing a course of inpatient treatment. She also restarted outpatient treatment in early January but, again, her attendance was sporadic.

The State petitioned to terminate Sarah's parental rights in January 2019. In the months following, Sarah failed to maintain employment. She also did not return her children on time following visits. And Ryan reported strange interactions between A.B.-S. and Sarah, including phone calls where A.B-S. expressed concern about the man she could hear with her mother. The child also reported calls where Sarah asked A.B.-S. to lie to Ryan and the DHS.

The juvenile court found the inability to adopt a sober lifestyle supported the termination of Sarah's parental rights under Iowa Code section 232.116(1) (2019), paragraphs (d), (e), and (*l*) for both children; (f) for A.B-S.; and (h) for W.B. According to the court, termination was in the children's best interests. The court denied Sarah's request for additional time for reunification.

**II. Analysis**

The termination of parental rights follows a three-step analysis. *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010).

- First we must decide whether the evidence satisfies the ground alleged under section 232.116(1). *Id.*

- If so, we then apply the best-interests framework of section 232.116(2). *Id.* at 707.

- If termination is in the children's best interests, then we consider whether any statutory factors in section 232.116(3) should preclude termination. *Id.*

**A. Statutory grounds for termination**

Sarah argues the State did not offer clear and convincing evidence in support of the statutory grounds for termination. On appeal, we need only find sufficient evidence of one ground to affirm the ruling. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

**1. Ground as to A.B.-S.[4]**

Section 232.116(1)(f) permits the court to order termination when: (1) the child is four or older; (2) the child has been adjudicated as a CINA under section 232.96; (3) the child has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) there

---

[4] While the State contends Sarah waived her argument for termination of her rights to A.B.-S. under paragraph (f)—asserting her arguments do not "pertain to the elements" of paragraph (f)—we read her argument that the section does not apply because Ryan has custody as challenging the third requirement of "remov[al] from the physical custody of the parent." Iowa Code § 232.116(1)(f)(3).

is clear and convincing evidence that at the present time the child cannot be returned to the parent's custody as provided in section 232.102.

On appeal, Sarah contends this statutory provision does not apply because A.B.-S. has been in Ryan's care throughout the CINA case. We disagree. Physical removal from one parent starts the statutory timelines counting toward termination for either parent. *In re J.E.*, 907 N.W.2d 544, 547 (Iowa Ct. App. 2017). A.B.-S. remained in Sarah's custody even after the initial DHS involvement. But in July 2017, the court approved the DHS recommendation to remove A.B.-S. from the mother and placed her with the father. The child stayed with Ryan for nearly twenty consecutive months.

Although Sarah does not specifically challenge the fourth element, we also find the juvenile court could not safely return A.B.-S. to Sarah's care at the time of termination hearing. During the CINA case, Sarah entered inpatient treatment several times. Upon release, she failed to maintain a sober lifestyle outside that inpatient structure. Given Sarah's inconsistent progress, eight-year-old A.B.-S. would likely be subject to ongoing harm if returned to her mother's custody. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.").

### 2. Termination ground as to W.B.

Section 232.116(1)(h) allows for termination of parental rights when: (1) the child is three years old or younger; (2) the child has been adjudicated as a CINA; (3) the child has been removed from the parent's physical custody for six months

out of the last twelve, or for the last six consecutive months with any trial period at home having lasted less than thirty days; and (4) there is clear and convincing evidence the child cannot be returned to the custody of the parent at the present time.

On appeal, Sarah contests only the fourth element. She argues she had appropriate housing, was participating in services, and could resume care of W.B. "immediately."

We reject Sarah's argument for two reasons. First, Sarah's uncontrolled substance abuse poses an ongoing danger to her two-year-old daughter. As the child's guardian ad litem (GAL) expressed Sarah "has not made enough progress with regards to [W.B.]" Second, Sarah's many violations of the no-contact order with Joshua, W.B.'s father, threatens to place the child in harm's way. Because Sarah could not address her addictions, we find termination of parental rights was proper under section 232.116(1)(h).

## B. Best Interests and Factors Precluding Termination

Sarah also contends termination of her parental rights did not serve her daughters' best interests. *See* Iowa Code § 232.116(2). In support of this position, she professes her love for the children and points to a strong connection between mother and children. *See id.* § 232.116(3)(c). As to A.B.-S., Sarah urges termination was unnecessary because she was in Ryan's legal custody. *See id.* § 232.116(3)(a).

When considering best interests, we assess what placement will ensure the children's safety, and contribute to their long-term nurturing and growth, and their physical, mental, and emotional condition and needs. *See id.* § 232.116(2). After

our de novo review of the record, we conclude termination of Sarah's parental rights will best advance the safety and well-being of both girls. We recognize Sarah's love for her children and her bond with them. But the destructive nature of her substance abuse leaves her unable to provide for their needs. *See In re J.K.*, 495 N.W.2d 108, 113 (Iowa 1993) ("[T]he parents have severe substance abuse problems. The same have clearly in the past presented a danger to themselves and to the children. . . . The children have clearly been damaged by these abuses of the parents.").

We place great stock in the GAL's considered conclusion that termination is in the children's best interest. The GAL acknowledged Sarah's especially strong bond with A.B.-S. But the GAL rhetorically asked, "[H]ow long does [A.B.-S.] have to wait to have a consistency from her mother in her life?" The GAL noted Sarah made promises to her daughter that she could not keep. In the GAL's view, termination is in the child's best interests because she would not have that constant cloud of disappointment hanging over her head. *See D.W.*, 791 N.W.2d at 703 (finding termination less detrimental than allowing the fraught relationship to continue).

We also reject Sarah's argument that termination is unnecessary because a relative has custody of A.B.-S. *See* Iowa Code § 232.116(3)(a). That statutory factor permits the court to forgo termination, but does not mandate it. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). Here, termination of the legal relationship with Sarah was the preferred path for A.B.-S. to achieve permanency and peace of mind in her father's custody.

**C. Additional time for reunification**

Lastly, Sarah contends the juvenile court erred in denying her request for six more months for reunification.  Under section 232.104(2)(b), if permanency is postponed, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  A parent's past performance gives insight into future care she may provide.  *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

Little in Sarah's past performance signals six more months would elevate her parenting ability.  She has not successfully demonstrated the capacity to maintain a drug-free lifestyle outside inpatient treatment.  As the juvenile court observed, "She has continued to fail to utilize the skills she learned in treatment."  We agree an extension of time is not warranted.

**AFFIRMED.**